UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

SONNI E. HEGARTY,
an individual,

    Plaintiff,

v.                               CASE NUMBER:

FELDER SERVICES, LLC,
a domestic limited liability company,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Sonni E. Hegarty ("Plaintiff"), hereby files this complaint and sues Felder Services, LLC, ("Defendant") pursuant to 42 U.S.C. § 12101, *et seq.,* the Americans with Disabilities Act ("ADA"), and alleges:

## JURISDICTION AND PARTIES

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, 29 U.S.C. §216(b) and 42 U.S.C. § 12101, *et seq*.

2. Venue is proper in this Court, the Southern District of Alabama, pursuant to 28 U.S.C. §1391(b)(c).

3. Plaintiff, Sonni E. Hegarty, is an adult resident of the state of Alabama and was employed by Defendant, Felder Services, LLC.

1

4. Defendant, Felder Services, LLC, is a domestic limited liability company registered to do business and in fact conducting business in Fairhope, Alabama.

5. All the events giving rise to this cause of action occurred in the Southern District of Alabama.

## FACTUAL BACKGROUND

6. Plaintiff began her employment for Defendant as a part-time janitor at Thomas Hospital in Fairhope, Alabama, on or about May 15, 2024, after submitting an application the previous day.

7. Plaintiff suffers from a qualified disability insofar as she has had multiple surgeries on her right arm and has visible scarring and reduced range of motion and is entirely unable to supinate her forearm, all of which is secondary to an acute fracture of her right radial head.

8. Plaintiff is a recipient of Social Security Disability benefits, since February 5, 2021, because of the limitations in the use of her right upper extremity as well as anxiety and depression, and was employed under the Ticket to Work program of the Social Security Administration

9. Defendant was aware of Plaintiff's disabilities as Plaintiff discussed them with the hiring assistant manager, "Danielle," during her initial interview and first day on the job.

10. During her first day on the job, May 15, 2024, Plaintiff attempted to mop and sweep, but was unable to handle the mop, bucket, or broom due to her arm limitations and told Danielle that she was unable to do those activities and that she would not be coming back to work.

11. In response, Danielle begged Plaintiff to stay and told Plaintiff she would make whatever accommodations were necessary for her to do the job.

12. As a result of that conversation, Danielle assigned Plaintiff's second shift coworker, "Joterra," who had been hired the same week as Plaintiff, to mop and sweep floors, while limiting Plaintiff to those duties she could physically perform, including cleaning toilets, bathroom counters, sinks, restocking soap, toilet paper, paper towels, vacuuming small areas of carpet near the elevators, cleaning kitchen counters and sinks, and dusting as needed.

13. On or about July 11, 2024, Danielle texted Plaintiff about the possibility of terminating Joterra's employment, but advised that if that occurred, other coworkers would handle the sweeping and mopping duties and Plaintiff would continue cleaning bathrooms and her other duties as before.

14. On August 13, 2024, Plaintiff advised a supervisor, "Norman," that while Plaintiff had been hired at $12 per hour, she was only being paid at the rate of $11 per hour since her hire date and that Plaintiff had only just realized the error when she had looked at her paystubs.

15. Norman agreed to bump her pay up to $12 per hour and thanked her for her hard work on multiple occasions via text message.

16. On September 26, 2024, Joterra shared texts from Danielle with Plaintiff indicating that if Plaintiff needed to help her mop and sweep, then Plaintiff will just have to "suck it up."

17. On November 2, 2024, Norman texted Plaintiff and asked if she would mind sweeping and mopping the stairwells on the following day.

18. Plaintiff replied that she was not comfortable mopping a stairwell due to her disability which prevents her from being able to mop.

19. On December 2, 2024, Danielle held a meeting in the lobby with staff including several newly hired employees who had been hired in late November in which she told all the employees about Plaintiff's disability and then assigned Plaintiff the job of mopping the lobby in front of everyone.

20. Plaintiff reminded Danielle of what she had known since day one of Plaintiff's employment, for approximately six months, by motioning to her arm and stating that she could not mop in front of all her co-employees.

21. Following that meeting, Plaintiff's hours were cut from 20-22 hours per week to 10-12 hours per week.

22. On December 3, 2024, the recently hired employee who was assigned to mop, "Josh," did not show up to work and Danielle texted Plaintiff that she needed Plaintiff to mop the bathrooms and the lobby by the elevators.

23. Plaintiff again reminded Danielle that she was unable to mop.

24. On December 9, 2024, Norman emailed Plaintiff reasonable accommodation paperwork for Plaintiff to complete and for her treating physician to complete and advised Plaintiff that she would no longer be allowed to work until she provided medical records proving her disability and justifying her need for accommodations.

25. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission against Defendant on April 7, 2025, and received a Notice of Right to Sue on or about April 9, 2025, copies of which are attached hereto as Exhibits A and B, respectively.

**COUNT I – AMERICANS WITH DISABILITIES ACT ("ADA")**

26. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 25, above.

27. Plaintiff is a qualified person with a disability as defined by the ADA in that (a) she has a physical impairment that substantially limits her major life activities; (b) she has a record of such an impairment, and (c) she is regarded as having such an impairment.

28. Defendant, initially accommodated Plaintiff for approximately six months between May 2024 and November 2024, by not requiring Plaintiff to mop or sweep, thus establishing the essential functions of Plaintiff's job did not include mopping or sweeping.

29. Beginning in November 2024, Defendant failed to accommodate Plaintiff's disability and began to publicly shame Plaintiff for accommodations she had been offered on the first day of her employment.

30. On or about December 9, 2024, Defendant constructively terminated Plaintiff by refusing to allow Plaintiff to return to work until she provided medical documentation in support of Plaintiff's need for the accommodations she had enjoyed for over six months, since the first day of her employment, despite the open and obvious nature of her disability.

31. As a result of the foregoing, Plaintiff was caused to be injured and damaged; to have her career significantly and adversely impacted; to forgo compensation and benefits; and to endure embarrassment, mental anguish and emotional distress.

32. Plaintiff has satisfied all administrative prerequisites to bringing this claim.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

      A.      Injunctive relief;

      B.      Compensatory damages for loss of wages, loss of benefits, embarrassment, mental anguish, and emotional distress;

      C.      Pre and post judgment interest;

      D.      Attorneys' fees;

      E.      Costs;

      F.      Punitive damages to deter such conduct in the future;

      G.      Such other relief as to which she may be entitled.

## COUNT II – ADA RETALIATION

33. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 25, above.

34. In taking the above-described actions, Defendant intentionally and wrongfully retaliated against Plaintiff for her protected activity in requesting accommodations under the ADA.

35. Specifically, Defendant publicly shamed Plaintiff in front of all her co-employees by discussing Plaintiff's disabilities in a group meeting and then attempting to assign mopping to Plaintiff requiring her to protest the assignment on the basis of disability in front of all of her co-employees.

36. Further, Defendant reduced Plaintiff's hours significantly on or about December 2, 2024, following Plaintiff's public refusal to mop and sweep, despite

her previous accommodations in which Plaintiff was not required to engage in such activities since the start of her employment approximately six months earlier.

37. Further, Defendant, on or about December 9, 2024, after providing accommodations for over six months based on Plaintiff's open and obvious disabilities associated with scarring and reduced range of motion of her right arm, insisted on Plaintiff providing medical documentation to support her need for continued accommodations and refused to allow Plaintiff to return to work until she complied with such a request.

38. As a result of this retaliation, Plaintiff has suffered and will continue to suffer damage to her professional life and career opportunities, pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life and non-pecuniary damages.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands the following relief:

    A.    Injunctive relief;

    B.    Compensatory damages for loss of wages, loss of benefits, embarrassment, mental anguish, and emotional distress;

    C.    Pre-judgment interest;

    D.    Attorneys' fees;

    E.    Costs;

    F.    Punitive damages to deter such conduct in the future;

    G.    Such other relief as to which he may be entitled.

Dated this 5th day of June, 2025.

                                                Respectfully submitted,

                                               By:   */s/ Edward I. Zwilling*
                                               Edward I. Zwilling, Esq.
                                               Bar No.: ZWILE1564

**OF COUNSEL:**
Law Office of Edward I. Zwilling, LLC
4000 Eagle Point Corporate Drive
Birmingham, Alabama 35242
Telephone: (205) 822-2701
Email: edwardzwilling@zwillinglaw.com

## **JURY DEMAND**

PLAINTIFF DEMANDS TRIAL BY A STRUCK JURY ON ALL ISSUES SO TRIABLE.

                                             */s/ Edward I. Zwilling*
                                             Edward I. Zwilling, Esq.